## THE SEGUIN.

### NEPTUNE LINE, Inc., v. STONE & COOPER et al.

District Court, D. Maine, S. D. October 2, 1926.

Nathan T. Thompson, of Portland, Me., for libelant.

Pattangall, Perkins & Locke, of Augusta, Me. (J. B. Perkins, of Augusta, Me., of counsel), for respondents.

HALE, District Judge. This libel is brought by the owners of the barge Troy to recover damages alleged to have been sustained by her in a berth provided by Stone & Cooper, in the Kennebec river, at Augusta, Me., November 16, 1922. The libel also alleges fault on the part of the steam tug Seguin for berthing the barge at an unsuitable berth.

The barge Troy was built at Nowank, Conn., in 1889, and was chartered October 31, 1922, by Stone & Cooper, to convey a cargo of coal from Elizabethport, N. J., to Parkers' Flats, Me., near the mouth of the Kennebec river. The barge was loaded with 848.16 tons of coal, 245.5 tons forward, 250.5 amidships, and 353.6 tons aft. She arrived at Parkers' Flats November 12th. On the afternoon of that day the tug Seguin picked her up and towed her to Bath, where she remained until November 16th, when she was towed to Augusta and docked at Stone & Cooper's wharf early in the afternoon, with the port side toward the wharf, headed up river. That night she sank at the wharf.

The charter contains the following:

"The cargo or cargoes to be received and delivered alongside, sufficient water guaranteed. Literage, if any, to be paid by cargo."

The bill of lading provides that on arrival at port of destination the captain was to report his vessel to the consignee, "who must provide a safe berth for discharging same." The libelant contends that the dock owners did not provide a safe dock, and that, on the falling tide, the Troy rested on the bottom, her seams opened by reason of the strain caused by the unevenness of the bottom, both her ends resting on some hard substance, while there was a good depth of water under the rest of the barge, and that she suffered other injuries by reason of her stern resting on a ledge.

Respondents contend that the berth was a safe one; that the barge Troy was not injured by any defect in the dock, but by reason of her unsoundness and of being overloaded; that all barges at the dock in question grounded at low water; and that this was known by the dock owners and by the captain of the barge.

The principal question at issue relates to the condition of the dock in which the barge berthed. The libelants offer testimony tending to show that at the time of the berthing at high tide there was about 12 or 13 feet of water; and the boat was drawing from 12 to 13 feet. Captain McCauley says he knew when he went into the berth that he would ground at low water; that he had many times berthed at docks where he had grounded at low water; that, after the boat sunk, soundings were made and the deck was found to be lifted up from $3\frac{1}{2}$ to 4 inches at the stern; that he sounded with a pole around the place where the rudder stock came down, and found a hard bottom and a "ledge at the stern"; that he found, also, a greater depth of water amidships than at the stern of the barge. He testifies, also, to other defects of the dock.

The evidence as to the condition of the bottom was contradictory. The testimony

which I regard as decisive in the case comes from the submarine diver, William S. Tibbetts, who made a survey of the dock in May, 1924, and produced in court a detailed sketch of the whole bottom. He testifies fully as to his methods. He used a sharp pointed steel rod, 3 feet long. He ran a long iron pipe 35 feet out into the river. With this pipe to guide him, he dragged the steel rod and walked over the whole bottom. He found no ledge where the stern of the barge lay; he found no ledge anywhere. He found even bottom at the place where the barge lay, and that there was not a greater depth of water amidships than at the ends of the barge. I think he is correct in his testimony that he found no condition which could have caused the damage to the barge. Henry F. Hill, the engineer who made soundings through the ice, substantially corroborates the testimony of the diver. All the evidence relating to soundings is unsatisfactory, compared with the positive testimony of Tibbetts, a diver of 34 years' experience, who explored every foot of the dock, and it is shown that there had been no substantial change in the dock from the time of the injury to the time of the exploration. He found sand, mud, and small stones, some of them perhaps twice as big as his fist; but he found "nothing on the bottom that would damage a barge or vessel lying there."

The libelants urge that the injuries to the barge might have come from a condition of the bottom found a few feet down river from the southern end of the wharf, and from another condition existing near where it is claimed the bilge of the barge rested; but the preponderance of evidence persuades me that the injury did not result from those conditions, or from any defect in the bottom of the dock.

Other cases heard before me, relating to alleged defects in docks, have been brought to my attention, and it is urged that they present facts similar to the instant case. In Merritt v. Sprague (D. C.) 191 F. 627, I found the dock clearly unsafe. A boulder was discovered at the point where the injured vessel rested. In Philadelphia & R. R. Co. v. Walker (D. C.) 139 F. 855, great inequality was found on the bottom of the dock where the injured barge lay.

In Look v. Portsmouth, etc., Street Railway (D. C.) 141 F. 182, the injury occurred as the result of contact of the chains of the injured ship with electric wires within the control of the respondent. In Thompson v. Winslow (D. C.) 138 F. 73, a towage case, the injury occurred in the back bay of Portland harbor; in that case I have referred to the leading authorities relating to this subject.

In Smith v. Havemeyer (D. C.) 32 F. 844, Judge Addison Brown had before him a case in which the libelant's vessel was injured by a spike projecting from a beam in the wharf. He found that the wharf was not a proper wharf, "or in a proper condition below the water line to receive vessels for the discharge of cargo," and held that the defendant was prima facie chargeable with negligence, and, to exonerate himself, it was incumbent upon him to show reasonable care and examination in regard to the condition of the wharf.

In the case at bar the testimony compels the conclusion that the dock was a suitable place to berth a sound vessel, and that the dock owners showed reasonable care in the premises. I am persuaded, by a fair preponderance of the evidence, that the dock owners made a substantial compliance with their engagement to provide a safe berth for discharging the cargo of the barge. While the charter contains a provision that "sufficient water was guaranteed," I am satisfied from the testimony that both the dock owners and the captain of the barge knew that in docking at the wharf the barge must lie aground at low tide.

In reaching my conclusion I do not take into consideration the testimony offered by the respondents that from May, 1921, to September, 1925, a very large number of barges had been docked without damage at the dock in question; those barges being of approximately the same length, depth, and beam as the barge Troy. Such evidence is held by the courts to be of small probative value.

I am of the opinion that the injury was not occasioned by an unsafe condition of the dock. The evidence shows that the barge was 32 years old. There was testimony that she had been recently overhauled; but witnesses, competent and expert in maritime matters, gave their opinion that she was not in seaworthy condition. It was in evidence that her engineer said that he had been pumping throughout the voyage; that the boat was rotten, and, "if he ever got back to New York, he was going to get off and keep off."

On the whole I am of the opinion that the injury was sustained by reason of the barge being old, heavily loaded astern, and not of sufficient soundness to enable her to lie aground safely at low water in any dock, even though such dock were in a reasonably safe and suitable condition.

It is ordered that the libel be dismissed. The respondents, Stone & Cooper and the steam tug Seguin, to recover costs.